**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA, | ) ) ) ) | |
| Plaintiff, | ) ) | Civ. No. _____ |
| v. | ) ) | |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; FEDERAL BUREAU OF PRISONS, | ) ) ) ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Defendants. | ) ) ) | |

**INTRODUCTION**

1.      This action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeks to compel the United States Immigration and Customs Enforcement ("ICE") and the Federal Bureau of Prisons ("BOP") to immediately process and release the records relating to the January 9, 2026, death of Parady La.

2.      Mr. La was detained on January 6, 2026 outside of his Upper Darby Residence and held at the Philadelphia Federal Detention Center ("FDC") located in Philadelphia, Pennsylvania.

3.      Upon information and belief, on January 7, 2026, Mr. La was transported by emergency medical services to Thomas Jefferson University Hospital in Philadelphia. He died at the hospital on January 9, 2026.

1

4.      Mr. La's three days in custody are a black box due to Defendants' failure to produce records or provide additional public details other than a disparaging and dehumanizing press release.[1]

5.      That is why, on February 5, 2026, Plaintiff, the American Civil Liberties Union of Pennsylvania ("ACLU"), filed two separate FOIA requests to ICE and BOP on behalf of Jazmine La, Mr. La's daughter and next-of-kin. The documents requested include Mr. La's detention file, medical records, autopsy report, witness statements, and investigations into Mr. La's death, as well as relevant agency and institutional policies and procedures in effect at the time. These records will provide Ms. La with closure and a more thorough account of her father's untimely death.

6.      To date, ICE and the BOP have failed to produce any of the requested records.

7.      Defendants' failure to produce any of the requested documents or information violates the FOIA. Plaintiff, on behalf of Ms. Jazmine La, now seeks declaratory, injunctive, and other appropriate relief to compel the prompt production of agency records improperly withheld by ICE.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action, including the authority "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld" from Plaintiff under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. *See also* 28 U.S.C. § 2202.

---

[1] Since Plaintiff filed their FOIA request, ICE released one additional document publicly: a one-page detainee death report.

9.      Venue in this district is proper under 5 U.S.C. § 552(a)(4)(B) because Plaintiff's principal place of business is in the Eastern District of Pennsylvania. For the same reason, venue is proper under 28 U.S.C. § 1391(e)(1)(C).

10.     Declaratory relief is appropriate under 28 U.S.C. § 2201(a).

**PARTIES**

11.     Plaintiff ACLU of Pennsylvania is a 501(c)(3) nonprofit organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases and works to advance those important protections through various forms of advocacy and public education across the Commonwealth. Since its founding, the ACLU of Pennsylvania has been deeply committed to ensuring that citizens and noncitizens alike receive the due-process protections afforded to them by the Constitution. This work includes promoting transparency at both the state and federal level, often by seeking records under FOIA. ACLU of Pennsylvania represents Ms. Jazmine La and submitted the FOIA requests at issue in this matter on her behalf.

12.     Defendant ICE is a sub-agency within the Department of Homeland Security ("DHS"). ICE is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is responsible for enforcing federal immigration laws, including through the apprehension, detention, and removal of individuals it alleges can be subject to removal proceedings and deportation from the United States.  ICE held Mr. La in its custody from approximately January 6, 2026, to January 9, 2026, the date of his death. ICE has possession, custody, and control over the records requested by Plaintiff.

13.     Defendant BOP is a subcomponent of the U.S. Department of Justice and an agency within the meaning of 5 U.S.C. § 552(f)(1). BOP has an agreement with ICE to hold immigrant detainees, and by facilitating immigration enforcement inside federal prisons, is charged with the

management and regulation of all Federal penal and correctional institutions pursuant to 18 U.S.C. § 4042(a)(1). The Philadelphia Federal Detention Center is operated by the BOP. The BOP has possession, custody, and control over the records requested by Plaintiff.

14. Defendants have custody and control over the records Plaintiff seeks to make publicly available under 5 U.S.C. § 552(a)(3).

## STATUTORY AND LEGAL FRAMEWORK

15. "The Freedom of Information Act was enacted to facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)). Its basic purpose is to "ensure an informed citizenry", which is "vital to the functioning of a democratic society" and needed as a check against corruption and to hold the government accountable to the governed. *See Nat'l Lab. Rels. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Consistent with this purpose, the FOIA statute creates a "strong presumption in favor of disclosure [and] places the burden on the agency to justify the withholding of [] requested documents." *Ray*, 502 U.S. at 173.

16. FOIA requires federal agencies to disclose records in response to a member of the public's request, unless those records fall within one of nine narrow statutory exemptions. 5 U.S.C. §§ 552(a)(3)(A), 552(b)(1)–(9).

17. FOIA requires an agency to make an adequate search for responsive records that is "reasonably calculated to uncover all relevant documents." *U.S. ex. rel. Mistick PBT v. Hous. Auth. of Pittsburgh*, 186 F.3d 376, 384 (3d Cir. 1999).

18. An agency must respond within 20 working days after receipt of a FOIA request, notifying the requester of the agency's determination whether or not to fulfill the request, providing

the reasons for its determination, and informing the requester of his or her right to appeal the agency's determination to the agency head. *See* 5 U.S.C. § 552(a)(6)(A)(i).

19.     In "unusual circumstances," an agency may postpone its response to a FOIA request or appeal, but it must provide notice and the date on which a determination is expected to be dispatched. *See* 5 U.S.C. § 552(a)(6)(B). Generally, such notice shall not result in an extension of more than 10 working days. *See id.*

20.     If the agency fails to comply with a request within the statutory time period, a FOIA requester is deemed to have exhausted its administrative remedies and can proceed directly to the district court, where the agency must show "exceptional circumstances" justifying its untimeliness and due diligence in remedying the violation. *See* 5 U.S.C. § 552(a)(6)(C). Per the FOIA statute, "the term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section . . . ." 5 U.S.C. § 552(a)(6)(C)(ii).

21.     A district court has jurisdiction to enjoin the agency from withholding records and to order production of records that are subject to disclosure. *See* 5 U.S.C. § 552(a)(4)(B).

22.     A FOIA requester can seek a waiver of search and review fees on the ground that the disclosure of the information is in the public interest because it is likely to contribute significantly to the public's understanding of the operations and activities of the government, and is not primarily in the commercial interest of the requester. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Requests for fee waivers are to be "liberally construed in favor of waivers for noncommercial requesters." *Jud. Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quoting *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282 (9th Cir. 1987) and 132 Cong. Rec. 27, 190 (1986) (Sen. Leahy)).

23.     A FOIA requester can also seek a waiver of search and review fees on the grounds that the requester is a "representative of the news media," and the records are not sought for a commercial purpose. *See* 5 U.S.C. § 552(a)(4)(A)(ii). A representative of the news media is "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id.*

## STATEMENT OF FACTS

### Defendants Possesses the Records Requested by the ACLU

24.     On or about January 6, 2026, Mr. Parady La, was detained by ICE outside of his Upper Darby home, where he was transported to the FDC based in Philadelphia, Pennsylvania.

25.     Upon information and belief, Mr. La disclosed that he was going through withdrawal to FDC and/or ICE personnel.

26.     The information that the ACLU of Pennsylvania requested on behalf of Ms. Jazmine La is within Defendants' possession and control.

27.     The FDC is a federal detention center that is operated by the BOP and contracted to detain individuals for ICE.[2] Because ICE and BOP have not released a current iteration of their contract, it is unclear which agency retains what records as it relates to people held at FDC in immigration detention.

28.     ICE and its agents are obligated to create and maintain a variety of records related to individuals in its custody. The FDC operates under the 2019 National Detention Standards

---

[2] BOP signed an agreement with ICE to facilitate in "the confinement of ICE detainees at BOP institutions" on February 6, 2025. See Exhibit 1. This agreement was only valid for six months after signing. ICE and BOP have not disclosed any newer iterations of such agreement, including whether any terms of the agreement have been terminated or modified. ICE continues to detain people at FDC.

(revised 2019) ("NDS"), which require the facility to maintain a detention file containing "documents associated with normal operations in either the detainee's detention file or in a retrievable electronic format." U.S. Immigr. & Customs Enf't, *National Detention Standards For Non-Dedicated Facilities,* 196 (2019)[3]

29.     NDS 7.1 requires the detention file to include all documents generated during the intake process at the facility, as well as documents generated during a noncitizen's time in custody. *Id.* at 195-96. The documents generated during a noncitizen's detention include: special requests to the facility or ICE, disciplinary forms, grievances, strip search forms, staff reports about the detained person's behavior, and other records. *Id.* The facility staff maintains the file during a detained noncitizen's stay at a facility and archives the file upon transfer or release. *Id.* at 197. Importantly, facilities such as the Philadelphia Federal Detention Center, "shall have procedures addressing the circumstances under which a detention file may be requested and accessed by both facility staff and outside officials." *Id.* at 197.

30.     Furthermore, NDS 4.3 requires a detention facility to maintain a medical record file separate from the detention file. *Id.* at 113. This medical file contains a log of a detained noncitizen's interactions with health staff, such a medical and mental health intake screening form, a comprehensive health assessment, physical and mental health treatments received, records of medical/psychiatric alerts and holds, records of administration of prescription and nonprescription medicines, denial of treatment forms, and referrals for outside treatment. *See generally id.* at 113-124.

---

[3] Available at: https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf.

31.     In the event of a noncitizen's death at an immigration detention facility, each facility shall have policies or procedures for contacting a local coroner, and scheduling and making arrangements for an autopsy. *Id.* at 136.

32.     Additionally, after the death of a noncitizen in ICE custody, specified agencies within and outside of the Department of Homeland Security must be notified and various investigations are required. *See* U.S. Immigr. & Customs Enf't, *Notification, Review, and Reporting Requirements for Detainee Deaths, ICE Directive 11003.5* (Oct. 25, 2021).[4] These investigations include, among others, an ICE Health Service Corps Mortality Review, an Office of Professional Responsibility Detainee Death Review, and a Significant Incident Report. *Id.*

33.     As detailed in the following section, each of Plaintiff's requests fall into the above categories of records maintained by ICE or its contractors, or into general categories of facility operation mandated by the NDS. *See, e.g.,* NDS at 24 (requiring the facility administrator to develop and document a comprehensive staffing analysis or staffing plan); *id.* at 34-35 (requiring each facility to operate pursuant to written post orders outlining the procedures, responsibilities, and duties of each security post).

34.     Thus, the records requested are in the custody, possession, or control of Defendants.

**Plaintiff's FOIA Request**

35.     On February 5, 2026, Plaintiff submitted its request to ICE via the SecureRelease Portal. *See* 6 C.F.R. § 5.3 (stating that all DHS components "have the capability to receive requests electronically, either through email or a web portal."). *See also FOIA Contact Information*, Dep't

---

[4] Available at: https://www.ice.gov/doclib/detention/directive11003-5.pdf.

Homeland Sec. (Mar. 16, 2026) (directing FOIA requesters seeking records in the possession of ICE to the DHS SecureRelease Portal).[5] A copy of the ICE Request is attached as Exhibit 2.

36.     On February 5, 2026, Plaintiff also submitted a request to BOP via email. *See See also Freedom of Information Act*, Fed. Bur. of Prisons (last accessed Mar. 26, 2026).[6] A copy of the BOP Request is attached as Exhibit 3.

37.     Both requests seek "any and all records prepared, received, transmitted, collected, and/or maintained by ICE and BOP which describe, refer, or relate to Mr. Parady La, who was held in ICE custody on or about January 6, 2026 until his death on or about January 9, 2026, at the Federal Detention Center." Exhibit 2, ICE Request at 1; Exhibit 3, BOP Request at 1. Plaintiff included a copy of ICE's Detainee Death Report as proof of Mr. La's death, and a declaration from Ms. Jazmine La, Mr. La's next-of-kin, authorizing Plaintiff to request the records on her behalf.

38.     All requested records are in Defendants' custody and control.

39.     Indeed, ICE has produced these same types of records in other FOIA cases involving the death of an ICE detainee. *See generally* Am. Civ. Liberties Union et. al, *Deadly Failures: Preventable Deaths in U.S. Immigration Detention* (analyzing the types of records produced by ICE in FOIA cases involving deaths in detention)[7]; *id.* at 19-20, figs. 3-4 (2024) (listing documents routinely created upon the death of a noncitizen in immigration detention, and other records in the possession of ICE related to that individual's detention). *See also Am. Oversight v. Dep't Homeland Sec.*, 691 F.Supp.3d 109 (D.D.C. 2023) (compelling the production of several reports routinely conducted in the course of investigating detainee deaths, such as

---

[5] Available at: https://www.dhs.gov/foia-contact-information.
[6] Available at: https://www.bop.gov/foia.
[7] Available at: https://www.aclu.org/publications/deadly-failures-preventable-deaths-in-us-immigrant-detention.

healthcare reports, draft and final detainee death reviews including recommendations from draft reports, and root cause analyses.); *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771 (9th Cir. 2022) (finding that the Agency improperly withheld records related to the death of a detained migrant such as a draft mortality review, emails between various DHS subagencies related to the death, and staffing and procedures at a detention center; also referencing the existence of other documents such as a final mortality or morbidity review and the "disappearance" of video footage from the facility that would have been subject to FOIA); *Owen v. Immigr. & Customs Enf't*, No. CV 22-0550 DSF (AFMx), 2023 WL 9470904 (C.D. Cal. Jan. 12, 2023) (noting that ICE produced documents in a "meta-FOIA" request – or a FOIA request about related FOIA requests – related to the in-custody death of a non-citizen).

40.     The request, in more detail than described here, seeks the following twelve categories of records: (1) detention file/disciplinary records; (2) medical care records; (3) the autopsy report and related documents; (4) videos and photographs; (5) all call records related to Mr. La's ICE detention, including call records to first responders; (6) witness statements related to Mr. La's death; (7) investigation records involving Mr. La; (8) written correspondence, including emails between various DHS sub agencies and contractors, regarding Mr. La's custody and death; (9) records about FDC's ICE-contract compliance after Mr. La's death; (10) records documenting FDC's staffing on and around Mr. La's death; and (11) policies, procedures, and training related to treatment for individuals experiencing withdrawal. *See* Exhibit 2 and 3 for the full text of the request. Each category involves documents routinely created and maintained by ICE and BOP.

41.     The Request also includes an application for a fee waiver or limitation under 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k) on the grounds that disclosure of the requested

10

records is in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and is "not primarily in the commercial interest of the requester." Exhibit 2, ICE Request at 11; Exhibit 3, BOP Request at 10. The matter has already generated substantial media coverage in local, national, and international media. Exhibit 2, ICE Request at 12; Exhibit 3, BOP Request at 11. The requested records on Mr. La's death at FDC would contribute significantly to the public understanding of ICE's activities at the facility. Exhibit 2, ICE Request at 11-12; Exhibit 3, BOP Request at 10-11.

42.    The Request explains that the ACLU of Pennsylvania plans to disseminate the information and make it available to the public through various mediums at no cost. Exhibit 2, ICE Request at 13; Exhibit 3, BOP Request at 12. Indeed, the ACLU and its affiliates, including the ACLU of Pennsylvania, are non-profit organizations with a longstanding history of disseminating information requested through FOIA at no cost and without a "commercial interest." 6 C.F.R. § 5.11(k)(1)(ii). As such, the ACLU of Pennsylvania satisfies the test for a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k).

43.    Additionally, the Request applies for a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) on the grounds that Plaintiff qualifies as a "representative of the news media" and that the records are not sought for commercial use, given the ACLU's non-profit mission and substantial activities to publish information for dissemination to the public. Exhibit 2, ICE Request at 13; Exhibit 3, BOP Request at 12. As part of its regular activities, the ACLU and ACLU of Pennsylvania regularly publish magazines, press releases, reports, and social media posts describing and analyzing information obtained about government activities, including through FOIA requests. Exhibit 2, ICE Request at 13-14; Exhibit 3, BOP Request at 12-13. The ACLU of Pennsylvania qualifies as a "representative of the news media" because it "gathers information of

potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III).

**Defendant ICE's Response**

44.     Under the FOIA statute, ICE is obligated to respond to FOIA requests within 20 working days, 5 U.S.C. § 552(a)(6)(A), making ICE's response deadline March 6, 2026.

45.     To date, ICE has failed to even acknowledge Plaintiff's request, let alone produce records responsive to Plaintiff's request within the statutory time period, document the steps it has undertaken to conduct an adequate search, or respond to Plaintiff's request for a fee waiver.

**Defendant BOP's Response**

46.     Under the FOIA statute, BOP is obligated to respond to FOIA requests within 20 working days, 5 U.S.C. § 552(a)(6)(A), making BOP's response deadline March 6, 2026.

47.     On February 26, 2026, BOP emailed Counsel to acknowledge receipt of the FOIA request, assigning it tracking number 2026-02787. BOP also invoked the ten-day extension permitted by 5 U.S.C. § 552(a)(6)(B), because "any records responsive to your request will be voluminous and require significant time to review." The request was assigned to the "complex" processing track. [8]  A copy of BOP's acknowledgment email is attached as Exhibit 4.

48.     BOP has not corresponded with Plaintiff since sending this acknowledgment on February 26, 2026.

49.     The ten-day extension lapsed on March 20, 2026.

---

[8] As explained in BOP's acknowledgement letter, BOP sorts requests dependent on the volume and complexity of where the records are located. *See* Exhibit 4.

12

50.     To date, BOP has failed to produce records responsive to Plaintiff's request within the statutory time period, document the steps it has undertaken to conduct an adequate search, or respond to Plaintiff's request for a fee waiver.

*** 

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
Freedom of Information Act, 5 U.S.C. § 552(a)(6):
Failure to Respond to FOIA Request Within Statutory Time Period

51.     Plaintiff repeats, re-alleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

52.     Plaintiff has a legal right under FOIA to the timely search and release of responsive, non-exempt agency records in response to its February 5, 2026 FOIA requests.

53.     On information and belief, Defendants currently have possession, custody, or control of the requested records.

54.     No legal basis exists for ICE and BOP's failure to timely search for and release responsive agency records in compliance with FOIA's time limits.

55.     ICE had, under 5 U.S.C. § 552(a)(6), 20 working days from the date of receipt of Plaintiff's FOIA request to make a determination on the request or to request an additional 10 days under unusual circumstances. ICE never invoked the 10-day extension, as is permitted under 5 U.S.C. § 552(a)(6)(B), which required ICE to respond to Plaintiff's request by March 6, 2026. Even assuming ICE invokes a 10-day extension after the partial DHS shutdown ends, per DOJ's own guidance, that 10 day extension would lapse on March 20, 2026.

56.     Similarly, BOP had, under 5 U.S.C. § 552(a)(6), 20 working days from the date of receipt of Plaintiff's FOIA request to make a determination on the request or to request an

13

additional 10 days under unusual circumstances. BOP invoked the 10-day extension permitted by 5 U.S.C. § 552(a)(6)(B), requiring it to respond to Plaintiff's FOIA request by March 20, 2026.

57.     To date, ICE and BOP have not produced the requested records or otherwise responded to Plaintiff's FOIA request.

58.     Because Defendants have failed to comply with FOIA's time limits, ACLU-PA has constructively exhausted all applicable administrative remedies.

59.     ICE and BOP's failure to comply with the statutory deadlines violates 5 U.S.C. § 552(a)(6).

60.     The Plaintiff is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly provide responsive records.

**SECOND CLAIM FOR RELIEF**
**Freedom of Information Act, 5 U.S.C. § 552(a)(3)(C):**
**Failure to Conduct Adequate Search**

61.     Plaintiff repeats, re-alleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

62.     Defendants are obligated to make reasonable efforts to search for the records requested by Plaintiff under 5 U.S.C. § 552(a)(3)(C).

63.     On information and belief, Defendants currently have possession, custody, or control of the requested records.

64.     To date, Defendants have not met their burden to show that they have made a reasonable, good-faith search for the records requested: the agency has not produced any documents responsive to Plaintiff's request, provided any declarations indicating the steps they have undertaken in their search, otherwise documented the adequacy of its search, or provided any indication that a search has taken place at all.

14

65.    Defendants failure to conduct an adequate search violates 5 U.S.C. § 552(a)(3)(C).

66.    The Plaintiff is therefore entitled to injunctive and declaratory relief requiring ICE to promptly make reasonable efforts to search for records responsive to his FOIA request.

**THIRD CLAIM FOR RELIEF**
**Freedom of Information Act, 5 U.S.C. § 552(a)(3)(A):**
**Improper Withholding of Agency Records**

67.    Plaintiff repeats, re-alleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

68.    Plaintiff has a legal right under FOIA to the timely search and release of responsive, non-exempt agency records in response to its February 5, 2026 FOIA request.

69.    Under 5 U.S.C. § 552(a)(3)(A), Defendants are obligated to make properly requested records promptly available to a requester.

70.    On information and belief, Defendants currently have possession, custody, or control of the requested records.

71.    To date, Defendants have not made any records available to Requester, nor produced a Vaughn index.

72.    Defendants have violated its obligations under FOIA by withholding requested records in its possession that are not exempt from disclosure under 5 U.S.C. § 552(b), at a minimum, 5 U.S.C. § 552(a)(3)(A) and the corresponding regulations.

**FOURTH CLAIM FOR RELIEF**
**Freedom of Information Act, 5 U.S.C. § 552(a)(4)(A)(iii) and 5 U.S.C. § 552(a)(4)(A)(ii)(II):**
**Improper Denial or Failure to Respond to Request for Fee Waiver**

73.    Plaintiff repeats, re-alleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

74.    Defendants ICE and BOP have not responded to Plaintiff's fee-waiver request for its February 5, 2026, FOIA Request.

75.    Plaintiff has constructively exhausted its administrative remedies with request to a fee waiver from Defendants ICE and BOP for the February 5, 2026, FOIA Request.

76.    Defendants have violated Plaintiff's right to a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and 5 U.S.C. § 552(a)(4)(A)(ii)(II) and under Defendant's own regulations, 6 C.F.R. 5.11(k), for Plaintiff's February 5, 2026, FOIA request.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1.    Assume jurisdiction over this matter;

2.    Declare that Defendants' failure to respond and produce the requested records is unlawful;

3.    Order Defendants to immediately conduct a full and complete search for all responsive records to Plaintiff's February 5, 2026 FOIA Request;

4.    Enjoin Defendants from withholding non-exempt, responsive records;

5.    Declare that Plaintiff is entitled to an unconditional waiver of all fees associated with Plaintiff's FOIA request;

6.    Order Defendants to immediately and unconditionally waive all fees associated with Plaintiff's FOIA request;

16

7.       Award Plaintiff its costs and reasonable attorneys' fees incurred in this action, as provided by 5 U.S.C. § 552(a)(4)(E); and

8.       Grant such other and further relief as this Court may deem just and proper.


Dated: April 23, 2026                                Respectfully submitted,



                                                     */s/Vanessa L. Stine*
                                                     Vanessa L. Stine (PA 319569)
                                                     Victoria Peña-Parr (PA 337924)
                                                     **AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA**

                                                     P.O. Box 60173
                                                     Philadelphia, PA 19102
                                                     T:  215-592-1513
                                                     E:  vstine@aclupa.org
                                                     E:  vpena-parr@aclupa.org